IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JESSIE WADE COWELL**                                                                             **PLAINTIFF**

v.                                          **Case No. 4:22-cv-00658-LPR**

**DOES, et al.**                                                                                        **DEFENDANTS**

## ORDER

In this 42 U.S.C. § 1983 case, Jesse Cowell claims that Lieutenant Shyrome Hadley used excessive force against him.[1] Lt. Hadley has filed a Motion for Summary Judgment, asserting the defense of qualified immunity.[2] For the reasons below, the Court DENIES the Motion.

## BACKGROUND

Summary judgment is inappropriate unless, "viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[3] "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question."[4] "To be material, the disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit."[5]

To properly evaluate a defense motion for summary judgment under the foregoing standard, the Court considers the record from the following perspective. First, the Court accepts

---

[1] Mr. Cowell's initial *pro se* Complaint named as defendant(s) "Arkansas Dept. of Corrections Tucker Corrections I Officers," but Mr. Cowell did not actually identify any suable individuals or entities. *See* Compl. (Doc. 1). The Court informed Mr. Cowell that this case would not proceed unless he could provide the name of at least one Defendant who could accept service of the Complaint. Order (Doc. 10) at 2. In two subsequent pleadings, Mr. Cowell named Defendants Caudell, Ramey, Budnik, Griffen, and Hadley. Suppl. to Compl. (Doc. 20); Second Suppl. to Compl. (Doc. 32). All Defendants except Lt. Hadley have since been dismissed. *See* Order (Doc. 47); Order (Doc. 72).

[2] Doc. 69.

[3] *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).

[4] *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

as true any fact that neither party disputes.[6]  Second, if the parties dispute a fact—and that dispute is genuine—then the Court accepts as true the version of that fact that is most favorable to the plaintiff.[7]  Third, from these accepted facts, the Court draws all reasonable inferences in favor of the plaintiff.[8]  Accordingly, the following background facts are only good for purposes of the instant summary judgment motion.

On December 20, 2021, Mr. Cowell entered upon the grounds of the Tucker Unit, a state prison facility in Jefferson County, Arkansas.[9]  Mr. Cowell was not a prisoner and came there alone of his own volition.[10]  Shortly after his arrival on prison grounds, he threw ten black packages of contraband—including tobacco, drugs, and a pocket knife—over the prison fence.[11]  Unfortunately for Mr. Cowell, several corrections officers had set up a stakeout to catch this very type of conduct.[12]  Almost immediately, these officers emerged from inside the Tucker Unit and began to pursue Mr. Cowell.[13]

One of the officers—a Sergeant Caudell—ordered Mr. Cowell to stop.[14]  Mr. Cowell did not obey, instead fleeing on foot through an open field.[15]  Sgt. Caudell fired one or two warning

---

[6] *See Smith v. Crittenden Cnty.*, No. 22-cv-00042, 2024 WL 2194847, at *3 (E.D. Ark. May 15, 2024).

[7] *See Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

[8] *See id.*

[9] *See* Pl.'s Resp. to Def.'s Statement of Facts (Doc. 78) ¶¶ 6–7.

[10] *Id.* ¶ 7.

[11] *See id.* ¶¶ 8–9.

[12] *Id.* ¶ 11.

[13] *See id.* ¶¶ 12, 15; Ex. 2 (Shyrome Hadley Decl.) to Def.'s Mot. for Summ. J. (Doc. 69-2) ¶¶ 6–7.

[14] Pl.'s Resp. to Def.'s Statement of Facts (Doc. 78) ¶ 13.

[15] *See* Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 11–12.  Lt. Hadley says Mr. Cowell fled into or through a ditch.  *See* Def.'s Statement of Facts (Doc. 71) ¶ 14.  Mr. Cowell denies being in a ditch.  *See* Pl.'s Resp. to Def.'s Statement of Facts (Doc. 78) ¶ 14; Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 11–12.  Based on this record, Lt. Hadley may well convince a jury to believe that Mr. Cowell fled into or through a ditch.  Lt. Hadley marshals several reports and witness statements to support his position.  *See* Ex. 2 (Shyrome Hadley Decl.) to Def.'s Mot. for Summ. J. (Doc. 69-2) ¶¶ 8–9; Ex. 3 (Internal Affairs Report #21-655) to Def.'s Mot. for Summ. J. (Doc. 69-3) at 8, 15, 29–31.  But Mr. Cowell's testimony is competent evidence going the

shots into the air.[16]  As soon as Mr. Cowell heard the shot (or shots), he stopped in his tracks, dropped to his knees, and put his hands in the air.[17]  Sgt. Caudell reached Mr. Cowell first, followed soon thereafter by Lt. Hadley.[18]  Although Mr. Cowell was on his knees, had his hands in the air, and offered no resistance at all, Lt. Hadley, Sgt. Caudell, and another officer "beat [Mr. Cowell] . . . ."[19]  Mr. Cowell specifically notes that the officers "proceeded to beat [him] all the way back to the truck," that "they . . . took turns beating [him] very bad," and that "all three [officers] struck [him] at one point."[20]  Mr. Cowell singled out Lt. Hadley as "one of the officers that beat [him]."[21]  And—taking all reasonable inferences in favor of Mr. Cowell—a reasonable jury could also find that Lt. Hadley kicked Mr. Cowell hard in the back.[22]

During the foregoing encounter, Lt. Hadley told Mr. Cowell that "it was [Mr. Cowell's] fault that they ran their truck into [a] ditch and that [Mr. Cowell] was going to pay for their windshield and [he] would regret being on prison property."[23]  After the foregoing encounter, Mr.

---

other way.  And, without a video or some other absolutely dispositive proof, Mr. Cowell's testimony creates a genuine dispute of fact for summary judgment purposes.  *Cf. Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

[16] *See* Pl.'s Resp. to Def.'s Statement of Facts (Doc. 78) ¶ 17.  The precise amount of warning shots that were fired is not material.

[17] *See* Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 11–12.  Lt. Hadley asserts that Mr. Cowell continued fleeing for another 200 yards after the warning shots were fired and refers to Sgt. Caudell's report as support for this assertion.  Def.'s Statement of Facts (Doc. 71) ¶ 18.  Mr. Cowell's testimony is competent evidence sufficient to create a genuine dispute of fact on this question.  Accordingly, the Court must accept Mr. Cowell's version for purposes of resolving the instant motion.

[18] Ex. 3 (Internal Affairs Report #21-655) to Def.'s Mot. for Summ. J. (Doc. 69-3) at 15.

[19] Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 10; *see also id.* at 12.

[20] *Id.*

[21] *Id.* at 14.

[22] Mr. Cowell testified that one of the officers kicked him from behind.  *Id.*  But he did not know which officer had done so.  *Id.*  Statements from Lt. Hadley and Sgt. Caudell suggest that it was Lt. Hadley's foot that made contact with Mr. Cowell's back.  Ex. 2 (Shyrome Hadley Decl.) to Def.'s Mot. for Summ. J. (Doc. 69-2) ¶ 13; Ex. 3 (Internal Affairs Report #21-655) to Def.'s Mot. for Summ. J. (Doc. 69-3) at 29–30.  Of course, Lt. Hadley (and to a lesser extent Sgt. Caudell) describe the contact in more innocent terms.  But that, again, is a genuinely disputed fact.  Mr. Cowell clearly testifies that "[o]ne of [the officers] kicked [him] from behind" and that he "think[s] that's where [he] got the three fractures on [his] vertebrae . . . ."  Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 14.

[23] Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 13.

Cowell was taken to a regional hospital, and then transferred to the UAMS Trauma Center in Little Rock, where he was diagnosed with intracranial hemorrhaging, a fractured zygomatic arch and orbital, a torn stomach lining, vertebrae fractures, and multiple contusions and abrasions.[24]

To be sure, Lt. Hadley contends that Mr. Cowell's story—especially about offering no resistance to being arrested—is a work of fiction.[25] Lt. Hadley points to several officer statements to suggest that Mr. Cowell was violently resisting arrest when Lt. Hadley reached him, and that Lt. Hadley simply tried to help Sgt. Caudell get Mr. Cowell under control.[26] Further, Lt. Hadley says the same statements show that Lt. Hadley did not intentionally kick Mr. Cowell in the back, but the contact occurred incidentally when Lt. Hadley slid down a muddy ditch to help Sgt. Caudell arrest Mr. Cowell.[27] But all this does is show that there are genuine disputes of fact, and those genuine disputes concern some very material facts.

With respect to whether Mr. Cowell was resisting at all when the officers approached him, Mr. Cowell's testimony on the point is competent evidence and the remaining record evidence is not dispositive the other way.[28] And the nature of Mr. Cowell's resistance, if any, dictates the amount of force, if any, that could be used to make an arrest. With respect to whether Lt. Hadley intentionally kicked Mr. Howell, it is first necessary to figure out whether Mr. Cowell was or was not in the ditch when he was arrested, because the answer to that question affects the credibility of

---

[24] *Id.* at 18–19.

[25] *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 70) at 9.

[26] *See id.*; *see also* Ex. 3 (Internal Affairs Report #21-655) to Def.'s Mot. for Summ. J. (Doc. 69-3) at 27–30.

[27] *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 70) at 3–4. Lt. Hadley also asserts that Mr. Cowell cannot identify any specific force used against him by Lt. Hadley. *Id.* at 7–8; Def.'s Statement of Facts (Doc. 71) ¶ 31. That is not accurate. As discussed above, Mr. Cowell testified clearly that all three officers, including Lt. Hadley, beat him. A reasonable jury could easily and readily infer from this that Lt. Hadley hit Mr. Cowell—indeed, hit him multiple times.

[28] *See supra* note 17. There's nothing like the video evidence in *Scott v. Harris* to conclusively contradict Mr. Cowell's testimony. *See Scott*, 550 U.S. at 378–80.

Lt. Hadley's unintentional-contact story. But, as noted *supra* in footnote 15, there is disputed evidence on that point.[29]

## DISCUSSION

In light of the factual record as it must be read at this stage, the legal analysis here is pretty easy. Lt. Hadley repeatedly hit (and at least once kicked) an arrestee who was not resisting in any way. Indeed, the arrestee had completely given up before Sgt. Caudell reached him, which was before Lt. Hadley reached him.[30] Hitting or kicking an arrestee who is entirely passive and non-resistant violates clearly established constitutional law.[31] So summary judgment should be denied.

---

[29] These are just two examples of genuinely disputed material facts, and they suffice to make the Court's point here. Lt. Hadley has some very good fact-based arguments on which he might prevail at trial. But these arguments are not winners at summary judgment. The Court has to take as true Mr. Cowell's version of disputed facts like the foregoing ones. And the Court has done so.

[30] Some of the beating appears to have taken place even after Mr. Cowell was handcuffed. *See* Ex. 1 (Dep. of Jesse Cowell) to Def.'s Mot. for Summ. J. (Doc. 69-1) at 10 ("I got down on my knees . . . at which point they came over, cuffed me, and took turns beating me very bad."); *id.* at 12 ("They came over, put the cuffs on me first thing, . . . and struck me on the face first, breaking my cheekbone, and then proceeded to beat me all the way back to the truck.").

[31] "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2018) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). Regarding the first prong of the qualified immunity analysis, the Fourth Amendment guarantees Mr. Cowell the right to be free from excessive force. *See Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006). "The dispositive question" for an excessive force claim "is whether the amount of force the officer used was objectively reasonable." *Shannon v. Koehler*, 616 F.3d 855, 862 (8th Cir. 2010). And when an arrestee is "not threatening anyone" and "not resisting arrest," it is "not reasonable . . . to use more than de minimis force against him." *Id.* at 863. Regarding the second prong of the qualified immunity analysis, "[a] clearly established right is one that is 'sufficiently clear [such] that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Importantly, the Supreme Court has cautioned against "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the . . . constitutional question beyond debate." *Id.* at 741. Typically, this requires either a controlling decision from the Supreme Court, a controlling decision from the Eighth Circuit, or a "robust consensus of cases of persuasive authority." *De La Rosa v. White*, 852 F.3d 740, 746 (8th Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 742). Ultimately, "[t]he dispositive question" for the second prong of the qualified immunity analysis "is whether the violative nature of the <u>particular</u> conduct is clearly established . . . in light of the specific context of the case." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (quoting *Mullenix*, 577 U.S. at 12).

Viewed in the light most favorable to Mr. Cowell, the facts as set out above show that Lt. Hadley deprived Mr. Cowell of the right to be free from excessive force by hitting and kicking Mr. Cowell while Mr. Cowell was handcuffed, compliant, non-resistant, and not otherwise threatening in any way. And, at the time this interaction occurred, the unconstitutionality of such conduct was clearly established by Eighth Circuit precedent at an appropriate level of specificity given the conduct at issue in our case. *See, e.g.*, *Ledbetter v. Helmers*, 133 F.4th 788, 796 (8th Cir. 2025) ("By 2020, it was clearly established that the 'use of force against a suspect who was not threatening and not resisting'

Another way to say all of this is that there are genuine disputes of material fact that need to be settled by a jury before the Court can decide the qualified immunity question. Consistent with Eighth Circuit precedent, the Court will revisit the qualified immunity question at trial.[32] Before being given a general verdict form, the jury will be asked to settle the facts necessary for the Court to determine the qualified immunity question.[33] Only if the Court denies qualified immunity based on the jury's fact findings will the Court go on to present the jury with a general verdict form.[34]

\* \* \*

For the foregoing reasons, Defendant Shyrome Hadley's Motion for Summary Judgment is DENIED.[35]

IT IS SO ORDERED this 1st day of July 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

is unreasonable." (quoting *Wilson v. Lamp*, 901 F.3d 981, 990 (8th Cir. 2018))); *Wilson*, 901 F.3d at 990–91 (collecting cases); *Shannon*, 616 F.3d at 864–65 (collecting cases and stating that "[l]ong before September 13, 2006, this court (among others) had announced that the use of force against a suspect who was not threatening and not resisting may be unlawful").

[32] *Cf. Spann v. Lombardi*, 960 F.3d 1085, 1088 (8th Cir. 2020) ("We therefore reject the challenge to the order denying the motion for summary judgment, but the officials may assert a defense of qualified immunity at trial.").

[33] *See Lee v. Anderson*, 616 F.3d 803, 811 (8th Cir. 2010) ("[C]arefully drafted special interrogatories may be submitted to the jury to resolve any questions of historical fact so that 'the court may make the ultimate legal determination of whether officers' actions were objectively reasonable in light of clearly established law.'" (quoting *Littrell v. Franklin*, 388 F.3d 578, 586 (8th Cir. 2004))).

[34] *Cf. id.*

[35] Doc. 69.